THE COCA-COLA BOTTLING COMPANY v. WOOD.

4-5320                                           123 S. W. 2d 514

Opinion delivered January 9, 1939.

490

*Roth & Taylor* and *C. E. Yingling,* for appellant.

*Rolland A. Bradley* and *Gordon Armitage,* for appellee. . . .

HOLT, J. Appellee, Alice Wood, recovered judgment for $1,000 against appellant, in the White circuit court, to compensate damages alleged to have been sustained by drinking a portion of a bottle of Coca-Cola, bottled by appellant, which contained a rusty and corroded Coca-Cola bottle cap. The acts of negligence set out in her complaint are: "That the said plaintiff drank practically all of the contents of the said bottle of 'Coca-Cola'; that the contents of the said bottle were poisonous, unwholesome and unfit for human consumption in that it contained a bottle cap which was rusty and corroded and from which all of the paint had been eaten away and which caused the said bottle of fluid to become poisonous and unfit for human use, and that the said plaintiff did not discover that the said bottle cap, so rusted, was in the said bottle until she had consumed practically all of the contents thereof. That the defendant was careless and negligent in the preparation of the said bottle of 'Coca-Cola' in that it permitted the said bottle top, which was made of metal, with a cork filler and painted, to be sealed in said bottle and sold for human consumption; and that by reason of such carelessness and negligence, the plaintiff became extremely sick and nervous and her system poisoned . . ." Appellant interposed a complete denial of all allegations of negligence.

There are three assignments of error presented here: 1. That the trial court erred in overruling appellant's motion to require appellee to file cost bond. 2. That the court erred in refusing to instruct the jury to find for the defendant because there was no substantial evidence upon which a verdict of the jury could be based. 3. That the verdict is excessive. The view that we have taken of this case makes it necessary for us to consider only the second assignment.

The material facts, as disclosed by the record, stated in their most favorable light to appellee, substantially are: On October 18, 1936, appellee, in company with her husband, stopped at a filling station and while sitting

in their car, drank about three-fourths of a bottle of Coca-Cola. After drinking most of the contents of the bottle she discovered a crushed Coca-Cola cap with a dark substance around it inside the bottle. Before drinking it she had been in good health. Some ten minutes after drinking same she became nauseated and nervous. They drove immediately to Beebe, Arkansas, where she was given an emetic which caused her to vomit several times. She remained in Beebe an hour or two and then proceeded to her home in Conway. Three or four days later she called her family physician and he prescribed for her and treated her from time to time at his office until she left Conway. She was unable to go to her husband's place of business, a cleaning and pressing establishment, where she kept the books and assisted in waiting on the customers, for a few days, during which time she kept the books at her home. Her doctor prescribed a soft diet for her which she has kept up more or less until the date of the trial. Her weight dropped from 145 pounds to 135 at the time of the trial, but was holding her own now and still suffers from pains in her stomach. The testimony of appellee's husband was substantially the same as her own.

Dr. Abington, who gave her an emetic at Beebe, which caused her to vomit several times, stated he knew nothing as to the cause of her condition except what she told him.

Dr. Brook, appellee's family physician, testified in substance that appellee had previously been in good health; that she came to him several days after the occurrence complained of and he told her he didn't know whether it was the Coca-Cola, the dinner she ate or Dr. Abington's treatment, but that she was a pretty sick girl, and continued to be sick for some time after that; that he treated her until April or May and put her on a diet because she kept having a gastritic condition and pains; that she would talk to him by telephone and come to the office and he would see her at her place of business and that he gave her anti-acids.

Dr. Dunklin, on behalf of appellee, testified in response to a hypothetical question as follows: "Q. Dr.

Dunklin, I will ask you to state to the jury whether or not, in your opinion, if a bottle of Coca-Cola had sealed up in that bottle a cap consisting of metal, cork and paint, the usual Coca-Cola top, and remaining therein for some time, if the liquid in the said bottle of Coca-Cola with the cap sealed therein is taken into the human stomach if it would cause gastritis or an irritation to the inner lining of the stomach? A. Yes. Q. Do you know of any case in which that has occurred? A. No, I can't cite you specifically to a case.'' The testimony is undisputed that there was no chemical analysis of that part of the Coca-Cola remaining in the bottle in question from which appellee drank.

On behalf of appellant, the testimony of Dr. J. M. Kilbury was introduced, and he testified in substance that he was a chemist engaged in laboratory work, chemistry and pathology, or the study of diseases, in which he had been engaged for about twenty years; that he was also a licensed physician; that he conducted tests by breaking down Coca-Cola bottle caps, as well as other caps, so as to make a chemical analysis of same, which caps consisted of the paint on them together with the iron, tin and cork in them; that iron is often given as a medicine and that an ordinary dose is three or four times as much as was found in one of these bottle caps; that the human body will absorb only a certain amount of iron, any excess passing into the intestinal tract; that no harmful effects result from a large dose of iron; that the amount of iron in a bottle cap taken into the human stomach would produce practically no effect; . . . that the bottle caps were dissolved by the use of acid and heat and the liquid content was fed to mice upon which it had no effect and that it would have produced practically the same effect on the mice that it would on a human being; that caps, both with paint and without paint, were placed in bottles and put in incubators which maintain a heat of about that of a human body and left there two weeks; that in the case of the caps that had paint still on them there was no substance in the Coca-Cola and in the ones from which the paint had been removed there was some tin that could be recovered, but that it was a very small amount, twenty to one hundred

times less than a toxic dose and that in his opinion either of these Coca-Colas could have been drunk by anyone without any ill effects.

Giving to the above testimony of appellee its strongest probative force, and ignoring appellant's testimony, we hold that it is not sufficient to support a verdict for appellee, because there is no evidence disclosed by this record of a substantial nature upon which a verdict can be based. The contents left in the bottle of Coca-Cola in question were never chemically analyzed and no one knows whether there were any harmful ingredients in these contents or not. To assume that there were and such was the proximate cause of appellee's injuries, would be the purest speculation and conjecture, and but a guess. It has long been the settled rule of this court that verdicts of juries cannot be based upon speculation and conjecture, or guess. In *Russell* v. *St. Louis, S. W. Ry. Co.*, 113 Ark. 353, 168 S. W. 135, we said: "But conjecture and speculation, however plausible, cannot be permitted to supply the place of proof. *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling*, 107 Ark. 476, 156 S. W. 171, and cases there cited."

In the recent case of *Coca-Cola Bottling Company of Southeast Arkansas* v. *Bell*, 194 Ark. 671, 109 S. W. 2d 115, this court said: "Proof of the fact that a fly was found in the bottle, and that flies do carry the germ of the disease from which appellee is suffering, does not suffice to support the verdict. It is mere conjecture that the fly found in the bottle was a carrier of the germ and had communicated the disease to appellee. The only definite proof upon the contamination of the drink is to the effect that no parasites were found therein; and while it may be true that this test was not conclusive, the fact is that it is the only testimony upon that issue of fact, and it is mere surmise and conjecture to say that the portion of the drink consumed by appellee was in fact tainted and infected with a germ which caused the disease, while the remaining portions of the drink were not."

"Again in *Lewis* v. *Jackson*, 191 Ark. 102, 83 S. W. 2d 69, we said: "Giving to the testimony its strongest

probative value will not supply matters not proved nor will surmises be converted into verities. The proximate cause of the fatal accident cannot be determined. The verdict was possible only by permitting surmise and conjecture to supply facts incapable of proof. This was error. See *Turner* v. *Hot Springs Street Railway Co.*, 189 Ark. 894, 75 S. W. 2d 675, and cases cited therein.''

The rule is again well stated in *Turner* v. *Hot Springs Street Railway Co.*, 189 Ark. 896, 75 S. W. 2d 675, as follows: ''In the recent case of *National Life & Accident Ins. Co.* v. *Hampton, ante* p. 377, 72 S. W. 2d 543, we stated the applicable rule as follows: 'It is the well-settled doctrine in this state that a jury's verdict cannot be predicated upon conjecture and speculation,' and continuing we adopted the rule as announced by the Supreme Court of the United States in *Patton* v. *Texas & Pacific Ry. Co.*, 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361 as follows: 'It is not sufficient for the employee to show that employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is not satisfactory foundation in the testimony for that conclusion.''

And again in *Hough* v. *Leech*, 187 Ark. 719, 74 S. W. 2d 970, this court said: ''Verdicts of juries must be based on evidence, must be supported by some substantial evidence, and not on mere speculation.'' As we view the record in this case when we give to the testimony on behalf of appellee its strongest probative force, the most that can be said is that it raises the mere conjecture that the illness suffered by her and the pain and suffering therefrom might have resulted from the consumption of the Coca-Cola in question. The evidence in this case falls far short of the character of

proof required to support a judgment for damages under the principles laid down in the foregoing cases.

Our conclusion is that the trial court erred in refusing to instruct a verdict in favor of appellant, and since the case seems to have been fully developed it will be reversed and dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.

MEHAFFY, J. (dissenting). I do not agree with the majority in reversing and dismissing this case. We are all agreed that jury verdicts cannot be based on speculation or conjecture, and the majority in this case states that it was pure speculation, conjecture, and a mere guess.

The appellee testified that she is 33 years old, married and was with her husband and others at the time she drank the bottle of Coca-Cola. She said it had a peculiar taste; she looked into the bottle and saw a bottle top. When she discovered the top in the bottle, she did not drink any more of it. It was eight or ten minutes after she drank the Coca-Cola until she became nauseated and nervous; she was treated by physicians after that, and testified positively that she never did have any trouble with her stomach until she drank this Coca-Cola, and since that time she has had trouble. There is no conjecture about her drinking the Coca-Cola, and no conjecture or speculation about her becoming sick; no conjecture or speculation about the fact that she had never had stomach trouble before, and that she has had it since. It is true the majority may believe that she did not tell the truth, but it is a well established rule of this court that whether she did or not was a question for the jury.

I am at a loss to know what it is claimed that the jury speculated about. Certainly it was not about her drinking the Coca-Cola, and certainly not about whether it made her sick; because the positive testimony establishes these facts.

Dr. E. H. Abington testified that Mrs. Wood came to his office, said she was sick at the stomach; she had been vomiting and wanted some medical attention, and he gave it to her; gave her something to empty her stomach; she seemed to be cramping and griping about the

stomach; she was nauseated and told the doctor she had been vomiting before she reached the house; she vomited some after she got there. He said he was not sure whether she had been vomiting or trying to vomit. She stayed at the doctor's between one and two hours. Certainly the majority cannot say that the jury conjectured or speculated about this.

Dr. H. C. Brook, a practicing physician at Conway, said he had been Wood's family physician for nine or ten years; that she came to him and said she had drunk a Coca-Cola and that it had made her sick; she had stopped at Dr. Abington's and he treated her, but she was not getting any better; she was pretty sick, and she continued to be sick some time after that; up to this time she had been in apparently normal health, and after that she had been upset. On cross-examination he testified that it was his idea that it was some peculiar acid, some acute irritation at that time, but it did not get well.

The jury had a right to believe, and evidently did believe, the positive testimony of these witnesses, and I am unable to see how anybody could say that the jury's verdict was based on conjecture. I can understand that the majority might not believe these witnesses and might think that the verdict was contrary to the preponderance of the evidence, but under the law, it is the business of the jury, and not this court, to determine where the preponderance of evidence is.

I think any ordinary person would believe from this testimony that the appellee drank the Coca-Cola and that it made her sick, and they would not have to speculate or conjecture to do that.

We have many times held that the credibility of witnesses and weight to be given to their testimony are questions for the jury. We have, also, held that where there is a conflict in the evidence, it is the province of the jury, and not this court, to determine the weight of the evidence; and even if it appears to us that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal.

"Common experience rather than technical rules should be adopted as the test. Mercantile and industrial

life, producing, as they do nearly all transactions of men that come before the courts of law and equity, are essentially practical. That which is the final basis of action, of calculation, reliance, investment, and general confidence in every business enterprise, may safely, in general, be resorted to prove the main fact. The courts need not discredit what the common experience of mankind relies upon. Judge Cooley once said that courts would justly be subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon." 10 R. C. L. 861, 862.

Article 2, § 7, of the Constitution of the State of Arkansas reads as follows: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law."

Section 23, Art. 7, of the Constitution of the State reads as follows: "Judges shall not charge juries with regard to matters of fact, but shall declare the law, and in jury trials shall reduce their charge or instructions to writing on the request of either party."

It appears, therefore, from the Constitution, that parties are entitled to a trial by jury, and that it is their province to pass on the facts without any charge from the judge with regard to matters of fact. Of course, it is a matter of fact as to whether appellee drank the Coca-Cola and whether it made her sick, and, in my judgment, these were questions for the jury, and their finding is conclusive here, and the judgment should be affirmed.

Mr. Justice HUMPHREYS agrees with me in the conclusions herein reached.