Mizell & Pearson, of Andalusia, and Powell & Hamilton, of Greenville, for appellant.

19 So.2d 77

## CHERO–COLA BOTTLING CO., ANDALUSIA, ALA., v. WATFORD.

### 3 Div. 866.

Court of Appeals of Alabama.
June 30, 1944.

Rehearing Denied Aug. 22, 1944.

494

Howell P. Rogers, of Greenville, for appellee.

BRICKEN, Presiding Judge.

Ira W. Watford sued the Chero-Cola Bottling Company, Andalusia, Alabama, for damages, alleging that he sustained certain personal injuries as a result of drinking a Royal-Crown Cola it is alleged that defendant bottled and distributed to the retail trade for human consumption. The plaintiff claimed that the defendant negligently permitted unwholesome, poisonous, foreign matter to be in the beverage which plaintiff claims he purchased from a retail merchant, one Griffin, and as a proximate consequence plaintiff was made sick and developed stomach trouble.

There was a verdict in favor of the plaintiff in the court below and from a judgment against it on said verdict the defendant brings the case here for a review of numerous adverse rulings.

The complaint does not disclose whether the Chero-Cola Bottling Company, Andalusia, Alabama, is a partnership, a corporation, or a trade name by which an individual was engaged in business. The sheriff's return shows that the summons was executed "by leaving a copy of the summons and complaint with J. F. Davis, President and Manager for Chero-Cola Bottling Company, the defendant herein named." There is a stipulation in the record showing that Chero-Cola Bottling Company was a corporation, not a partnership. The defendant appeared specially and by motion to quash summons and service and by a plea in abatement raised the point that the defendant was not a suable legal entity and was not shown to be such a party as was subject to suit.

The name Chero-Cola Bottling Company, Andalusia, Alabama, implies that the defendant was a partnership. Wahouma Drug Co. v. Clay, 193 Ala. 79, 69 So. 82. A partnership may be sued in Alabama in the partnership name. The judgment binds the partnership property only and not the property of the individuals composing the partnership. Alabama Code 1940, Title 7, § 141; Woodfin et al. v. Curry, 228 Ala. 436, 153 So. 620.

In this case the motion to quash the service was not predicated upon the claim that the defendant had not been legally served. The claim was that the defendant, which under the authorities cited was prima facie a partnership, was not such an entity or party as was subject to suit. The authorities cited show that the claim was without merit. Union Insurance Soc. of Canton, Ltd., v. Sudduth et al., 212 Ala. 649, 103 So. 845; Leeds Lodge v. Whitmire, 236 Ala. 677, 185 So. 178.

The plaintiff's version of the occurrence is that on Friday night, May 16, 1941, a senior play was being given at the school house at McKenzie. Plaintiff and his wife and son went to the play, riding a school bus for that purpose. When they arrived at the school building the plaintiff decided to go down to Mr. Griffin's filling station where soft drinks were sold. Plaintiff claims that he walked up and purchased an R—C Cola and that one Baggett was standing there and they engaged in a conversation. While plaintiff was engaged in drinking the R—C Cola he had purchased Baggett exclaimed: "What's that in there? What you got in there? Have you put Candy in there?" About that time plain-

tiff claims he felt a little something on his tongue which he thought was a fly's wing, whereupon he looked down in the bottle and said, "There is something in here, what is it? and we all huddled up and looked at it, and we couldn't make out what it was by the light we had on the overhead ceiling and Mr. Griffin says 'Let's go in the station where we can get close to my light on the desk, and we taken it in there and we turned it around and looked at it and we couldn't figure what it was and never did figure what it was, and then I told Mr. Griffin to put a cap on that thing for me, to have a man to drink that thing might kill a man, not wholesome at all, and he put a cap on it and I says, 'You got any adhesive tape?' and he says 'I think I have' and I says 'Put a roll on there. I don't want to leave the building with it in that shape, unless it is sealed up good and tight. I don't want anybody to say I tampered with it because you all three know all of the facts' and I says 'now put the date on it, this day and the hour of the night and your name—your initials on it' and he did that I says 'I want you to put a little more on it. I want you to put all three of our names on there and the time of night and now here is a 5¢ deposit on this bottle. I am taking this home with me.' Plaintiff further testified: "And about that time we begun to disband. I says 'I have got to go back to the school house.' I began to feel kind of sick then— 'I have got to go home' and I walked down the road, down towards the school towards the sidewalk, and I got right in front of the Methodist Church in McKenzie, Alabama, and seemed like everything in me was coming out and I reckon it did. I vomited there for some little bit and two of the boys that was with me come along and says 'What's the matter?' and I says 'I am sick.'" Plaintiff claims that he later got in the bus and went home. That he didn't call the doctor that night because the doctor was gone. That he was sick all the way home. That he was sick for at least two days and couldn't eat anything. That he had never had any previous trouble with his stomach in his life. He claims that he was treated by Dr. Jordan and Dr. Piper and that he was still suffering from his stomach when the case was tried on the 18th day of October, 1943, nearly two years after the occurrence.

Plaintiff denies that he drank any liquor on that occasion, but he called as his witness the filling station operator, Mr. Griffin, who testified positively and unequivocally that when the plaintiff came to his place of business plaintiff had some liquor and offered Griffin and Baggett a drink. Griffin further testified that both he and Baggett and the plaintiff all drank liquor from this bottle and on being asked what sort of liquor he answered it was "average moonshine liquor,"—either a pint or half a pint. Mr. Griffin further testified that the foreign substance in the R—C Cola looked like a cigarette package with the cigarettes taken out, although he says there were no letters on it. If it was a cigarette package the colors had all faded out. One theory suggested by the plaintiff was that the R—C Cola bottle was washed in a caustic soda solution and that the paper in the bottle became impregnated with caustic soda, causing the discomfort of which the plaintiff complains.

Dr. Jordan on being examined as a witness testified that he treated the plaintiff for stomach trouble some time subsequent to May 16, 1941, but he was unable to say how long after that date he treated the plaintiff. His opinion was that the plaintiff probably had gastric ulcers. He was further of the opinion that the bottle of R—C Cola with the paper in it would not have caused the condition the plaintiff was in. He testified that if the paper had a little tobacco in it it might create a little nausea but it was his opinion that it would not be permanent. On cross-examination this physician testified that assuming that the plaintiff was healthy and all right and purchased the R—C Cola and drank it not knowing what was in it, and within a short time became deathly sick and vomited and remained sick for three or four weeks unable to do anything and had to live on milk a long time and developed stomach trouble that in his opinion the drink would not cause the stomach trouble.

Dr. Piper, another physician who treated plaintiff's wife, was given a history of his trouble by the plaintiff and testified that he had no recollection of the plaintiff mentioning the bottle of R—C Cola in connection with his trouble, and that if he had mentioned it his attention would have been drawn to it to the extent that he would have paid attention and attached importance to it.

There was other testimony corroborating plaintiff's purchase of the R—C Cola, and some testimony tending to show that the plaintiff did not have any liquor on that

496

occasion. We feel, however, that the weight of the evidence is to the effect that plaintiff was in possession of some moonshine liquor and took a substantial drink of it on the occasion when he claims he purchased the R—C Cola.

We have attentively reviewed the evidence in this case and after making all allowance in favor of the jury's verdict we are of the opinion that it is contrary to the weight of the evidence. The lethal potentialities of moonshine liquor are too well known to require description by this court. Dr. Jordan referred to the fact that it is generally known that empty lye cans are common around illicit stills. Numerous press accounts tell us of fatalities following experience with moonshine liquor. We think it is as reasonable to assume that the condition the plaintiff complains of in this case was caused by the consumption of moonshine liquor as it was drinking R—C Cola. Coca-Çola Bottling Co. v. Wood, 197 Ark. 489, 123 S.W.2d 514, is an authority in point. It was there held that the most that could be said of the testimony was that it raised mere conjecture that the illness suffered might have resulted from the consumption of the beverage in question. In this case the consumption of moonshine liquor was more likely to cause the discomfort of which plaintiff complains than the R—C Cola according to the evidence in this case.

We are convinced that the trial court erred in not granting appellant's motion for a new trial. For the error pointed out the judgment from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.