## Lola Blarjeske and Lovina Black, Appellees, v. Thompson's Restaurant Company, Appellant.

### Gen. No. 43,112.

Heard in the third division of this court for the first district at the June term, 1944. Opinion filed February 14, 1945. Released for publication March 5, 1945.

Ross, Berchem & Schwantes, of Chicago, for appellant.

R. N. Wyckoff, of Chicago, for appellees; John B. King, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In a complaint filed in the superior court of Cook county Lola Blarjeske and Lovina Black alleged that Thompson's Restaurant Company, a corporation, operated restaurants in the City of Chicago; that it operated a restaurant at 111 East Chicago avenue in that city; that it invited the public generally to purchase and eat food on, as well as off, its premises; that on December 13, 1940 plaintiffs accepted the implied invitation to enter and become customers and to purchase food to be consumed off the premises; that they purchased a roast beef sandwich; that each of them ate one half of it; that the defendant warranted to them that the sandwich was pure, wholesome, free from any poisonous substance or taint and was fit for human consumption; and that the defendant breached the warranty, in that it served a sandwich which was impure, unwholesome, harmful and tainted, the eating of which caused plaintiffs to become sick and ill; and they claimed damages for pain and suffering, medical expenses and loss of earnings. No allegations of negligence were made. An answer categorically denied the allegations. A trial before the court and a jury resulted in a joint verdict in favor of plaintiffs for $600. Motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial, were denied, and judgment was entered on the verdict. This appeal followed.

On December 13, 1940 and for many years prior thereto defendant operated a restaurant at 111 East Chicago avenue in the City of Chicago. This restaurant was one of many similar restaurants it operated in the city. Defendant purchased all of its meat from packers located in Chicago, namely, Swift, Armour, Cudahy and Wilson. By the testimony of its superintendent who had charge of the commissary supplying all its restaurants and general supervision of the

restaurant at 111 East Chicago avenue, the meat buyer, the manager of the restaurant and the cook who had sole charge of the roasting of the beef and the service of the roast beef orders during the relevant time, defendant established that the meat used in its restaurants was received at a commissary operated by the defendant and was there cut to size for cooking and delivered to the various restaurants as required by the managers. In December 1940 the restaurant at 111 East Chicago avenue ordered a cut of sirloin of beef and this was delivered daily between 7 and 8 o'clock in the morning. Each piece of meat was wrapped individually. The beef, after being unwrapped, was placed in the oven for roasting. The beef was roasted approximately three hours and was ready for the noon trade, which began to appear about 11 o'clock. The only beef served at the restaurant was cut from the piece thus prepared. No cold beef was retained on hand when the restaurant was closed in the evening. Fresh beef was prepared daily at the restaurant. In the evening, when closing, any roast beef remaining was thrown out, regardless of the amount, along with all other cooked foods. Only two kinds of beef sandwiches were dispensed, namely, hot beef, which consisted of beef sliced from the roast and covered with hot gravy, and a plain beef sandwich (sometimes known as a cold roast beef sandwich) which was cut from the same roast, but served without gravy. The cook testified that she had been employed continuously at the same restaurant for approximately 12 years prior to December 13, 1940; that no roast beef was ever retained on the premises other than that cooked daily and that roast beef containing mold or a green growth was never served at the restaurant during the time that she was the cook, which included the day in question. At the time she testified she was employed elsewhere and had no interest in the outcome of the litigation. None of defend-

ant's witnesses testified as to the specific meat purchased by plaintiffs.

In December 1940 plaintiffs were co-workers in an apparel shop located on North Michigan avenue. Each earned $20 a week, altering garments sold in the shop. It was customary for the plaintiffs and some of their fellow workers to eat lunch at a table provided by their employer, located in the basement of the establishment. A small electric grill was available for making coffee, some of the employees brought food from home and one usually purchased food from the outside, frequently from defendant. On December 13, 1940 Mrs. Della Marie Bratt, a fellow worker, went to defendant's restaurant at 111 East Chicago avenue and purchased the food for the lunches. Before leaving her employer's premises she spoke to the employees who contemplated lunching there, and was asked by plaintiff Lola Blarjeske to purchase a chicken pie, and by plaintiff Lovina Black to purchase a roast beef sandwich. Both of these items were purchased by Mrs. Bratt from the defendant. On her return she delivered the chicken pie to Mrs. Blarjeske and the roast beef sandwich to Mrs. Black. The roast beef sandwich consisted of two pieces of white bread, sirloin of beef and some lettuce. When delivered to Mrs. Bratt, it was cut in half, and wrapped in a paper napkin. The roast beef sandwich was placed in a paper bag. The employees of defendant knew that the sandwich and chicken pie were to be taken out. While Mrs. Blarjeske consumed the chicken pie, Mrs. Black ate half of the roast beef sandwich. She did not observe how the sandwich tasted other than that it didn't taste good and made no comment about it other than to offer one half of it to Mrs. Blarjeske, when the latter stated she was still hungry after finishing her chicken pie. Mrs. Blarjeske ate approximately half of the half that remained of the roast beef sandwich and made comment on its dark color and how dry

it was. She wrapped the unconsumed portion in a napkin and threw it into a trash box. Mrs. Bratt, who brought the sandwich from the restaurant, saw the roast beef both at the luncheon table and at the doctor's office. She testified that it was thick and brown and looked like an end cut, also that it was dark, discolored and grayish. She heard Mrs. Blarjeske comment on how dry it was and say, "What a color." There was nothing unusual about the lettuce in the sandwich. Mrs. Blarjeske described the meat as "sort of blackish, brown, real dark and dry," and as "dark brown." She also testified that one side of the meat was "sort of greenish, funny color," and that "this was just around the edges."

Mrs. Black testified that she never opened up the sandwich, but that she observed it and ate half of it. She stated that "I didn't think there was anything wrong with it or I would not eat it myself. I made no mention to her [Mrs. Blarjeske] when I gave her half that it didn't taste all right." Dr. Robert J. Moses, who had an office in the building in which plaintiffs worked, testified that he saw the unconsumed portion of the sandwich and that the beef had a deep fungus growth on it, a green material or mold, which covered its entire area; that he telephoned the Health Department, but did not deliver the sample to that department, or undertake to have it analyzed. He did not take it to any of defendant's employees or confer with them about it. After keeping it in his possession about three days he threw it in the waste basket. Within a period of from 15 to 45 minutes after lunch Mrs. Black and then Mrs. Blarjeske became ill and vomited and suffered from diarrhea for approximately two hours before they were taken to the office of Dr. Moses. Up to that time they were both in good health and worked steadily. The only thing they ate in common that day was the roast beef sandwich. Dr. Moses kept them under treatment in his office for

about two hours, during which time he pumped their stomachs several times. Dr. Moses testified to finding pieces of meat with green mold affixed in the washings from their stomachs. Plaintiffs were then taken to the North Chicago Hospital, where they remained under treatment for four days. Each plaintiff paid $6 for the ambulance ride to the hospital. Each received a hospital bill of $18.90. They denied receiving any bill from the doctor. He testified that he sent each an identical bill for $100. Nothing had been paid to the hospital or to the doctor at the time of the trial. After leaving the hospital both plaintiffs were given further treatments by Dr. Moses. Mrs. Blarjeske was off from her work from December 13, 1940 to the early part of January 1941 on account of her illness. Mrs. Black went back to work about the first of the year. There is no complaint that the verdict is excessive.

Defendant, while denying a sale of roast beef having a green fungus growth attached to it, maintains that there is no evidence to prove a causal connection between the consumption of the roast beef sandwich and the subsequent illness of plaintiffs. Although Dr. Moses kept a portion of the unconsumed meat for three days, he made no attempt to have it analyzed. Although Dr. Moses testified for plaintiffs, he was not at any time asked to state his diagnosis, no hypothetical question seeking to establish a causal connection was propounded to him, and he did not testify that there might or could have been, or that there was any causal connection between the eating of the roast beef sandwich and the subsequent illnesses of plaintiffs. The jury was required to speculate upon that issue. Assuming that the meat had a covering of green mold, there is no evidence that the green mold could, might or did cause plaintiffs' illnesses. The burden was on plaintiffs to show a causal connection between the eating of the roast beef sandwich and their subsequent illnesses. A jury cannot be allowed

to determine disputed questions of fact from mere conjecture. *Bowman v. Woodway Stores,* 345 Ill. 110; *Walraven v. Sprague, Warner & Co.,* 235 Wis. 259, 292 N. W. 883; *Coca-Cola Bottling Co. v. Wood,* 197 Ark. 489, 123 S. W. (2d) 514. Because of the failure of plaintiffs to make the necessary proof as to the cause of their illnesses, defendant asks that the judgment be reversed without remandment. We are of the opinion that the judgment should be reversed, but that the parties should be given an opportunity to retry the case.

The second point presented by defendant is that since plaintiffs did not purchase the sandwich from defendant, they cannot claim advantage of an implied warranty. Defendant points out that the complaint alleges that plaintiffs entered the restaurant of defendant and purchased a roast beef sandwich; that the proof does not sustain this allegation, but discloses that the purchase was made by a third party, who under the evidence could have been considered the agent of plaintiff, Lovina Black, and that she could not be the agent of Lola Blarjeske with respect to the roast beef sandwich. We agree with defendant that Mrs. Blarjeske was a contractual stranger to both the defendant and her coplaintiff, Mrs. Black. She received her half of the sandwich as a gift from Mrs. Black. Defendant states that as to Lola Blarjeske there was clearly no implied warranty running from defendant since she had no contractual relation with defendant with respect to the roast beef sandwich and was not in any degree of affinity by blood, contract or law with her coplaintiff, the donor of the portion of the sandwich which Mrs. Blarjeske consumed. In the case of *Welter v. Bowman Dairy Co.,* 318 Ill. App. 305, we gave careful consideration to the proposition as to whether an implied warranty in the sale of milk in bottles extends beyond the immediate purchaser. There are a number of cases from other

jurisdictions which hold that the implied warranty does not extend beyond the immediate purchaser. In the *Welter* case we held that the implied warranty that the milk was fit for human consumption extended to the plaintiff, although she was not the purchaser. The *Welter* case was followed in *Haut v. Kleene,* 320 Ill. App. 273. We are of the opinion that the implied warranty that the roast beef sandwich was fit for human consumption extended to both plaintiffs, although there was no contractual relation between defendant and Mrs. Blarjeske, one of the plaintiffs.

The third point urged by defendant is that the court erred in instructing the jury that there was an implied warranty running from the defendant to plaintiffs. Our determination that the implied warranty runs to both plaintiffs disposes of this point.

Finally, defendant argues that should we reverse the judgment in favor of Mrs. Blarjeske, the entire judgment would be vitiated, as it was a joint verdict and a joint judgment. Plaintiffs concede that a reversal as to one plaintiff would require a reversal as to both. As we are reversing the judgment, it is unnecessary to pass on this point.

The judgment of the superior court of Cook county is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

KILEY and LUPE, JJ., concur.