444

4-9051                                        226 S. W. 2d 64

Opinion delivered January 23, 1950.

*John M. Lofton, Jr.,* and *Owens, Ehrman & Mc-Haney,* for appellant.

*G. W. Lookadoo,* for appellee.

DUNAWAY, J. Appellee Rorie brought this action against appellant Alma Canning Company and Safeway Stores, Inc., to recover damages allegedly sustained as a result of eating string beans prepared and canned by appellant and sold to appellee by Safeway. A demurrer by Safeway was sustained at the close of appellee's testimony and the cause as to that defendant dismissed. Appellee recovered judgment against appellant for $1,500.

The sufficiency of the evidence to sustain the verdict and judgment and certain instructions given by the trial court at the request of appellee are challenged on this appeal. The view we take of the case makes it unnecessary to discuss any of the assignments of error except the sufficiency of the evidence.

The evidence, viewed in its light most favorable to appellee, is substantially as follows: At the time of the incident alleged in his complaint, Rorie was a student at Ouachita College. On or about April 30, 1948, he purchased from Safeway in Arkadelphia two cans of string beans packed by appellant. For their noon meal on Monday, May 3, 1948, appellee's wife opened, heated

and served one of the cans of beans. After taking a few bites of beans he noticed a bitter flavor and on examining the serving dish of beans he discovered a worm, which he described as ''a green worm with lots of legs'' about an inch or an inch and a quarter long. On seeing the worm, appellee immediately lost his appetite and was sick; within thirty minutes he became nauseated and began vomiting. Later in the afternoon he again became ''awfully nauseated'', with ''cramping and griping'' in the lower part of his abdomen. He then went to see Dr. J. N. Pate who gave him some medicine. That night he again suffered cramping, nausea and vomiting; his bowels became loose and he passed some blood. He remained sick and vomiting for several days and was unable to attend classes. From May 3, 1948, when the beans were eaten until February 3, 1949, the date of the trial of this cause, appellee suffered periodic spells of nausea and diarrhea.

A few minutes after Rorie found the worm he went next door and brought a fellow student, Dan Barry, in to view his find. Appellee then took the bowl of beans containing the worm to the biology building at the college for the purpose of having the instructor determine whether there was anything toxic in the beans. On the way to the laboratory, the beans were displayed to Wesley Pool, another student. No microscopic examination or chemical analysis was ever made of the worm or the beans to determine the presence of any poisonous or deleterious substance. Both Barry and Pool testified they could not see that appellee was sick.

From appellee's own testimony it was established that he had contracted some gastro-intestinal disease while serving in the United States army prior to his discharge in 1946, and that he continued to suffer from this ailment throughout the year 1947, with periodic spells of nausea and diarrhea. During this period he was examined by a number of physicians and at times a special diet was required for him.

Two doctors testified at the trial, Dr. J. N. Pate, who saw appellee on May 3, 1948, when he had eaten the

beans and who had not seen him again until a day or two before the trial of this cause, testified that Rorie was treated by him on that occasion. Dr. Pate did not testify that eating the beans caused appellee's illness. Dr. R. L. Bryant, the Rorie family physician, who had examined appellee on December 23 and December 31, 1948, at appellant's request, testified as to his examination and findings. It was his opinion that appellee's condition was due to nervousness and inability to eat certain foods. Both these doctors stated that any bacteria in the can of beans would have been destroyed by the process of cooking for twenty-five minute at 240 degrees Fahrenheit, as had been testified to by officials of appellant concern.

There is no testimony whatever in the record tending to show that the can of beans packed by appellant contained any poisonous or deleterious substance which caused appellee's illness. The situation in the instant case is indistinguishable from that in the case of *Jonesboro Coca-Cola Bottling Co.* v. *Hambrooke,* 206 Ark. 385, 175 S. W. 2d 387, where we said at page 386: ''We think this evidence insufficient to make a case for the jury. There was no evidence that the presence of a bobby pin in a bottle of Coca-Cola would render it deleterious or harmful for human consumption and there was no evidence that the presence of such pin in the bottle here involved rendered the drink unfit for consumption or that it did cause her illness. No analysis was made of the remaining contents of the bottle, or at least no evidence was produced to show that such an analysis was made. True it is that she drank of the Coca-Cola and, in a short time became sick—not until after she had discovered the bobby pin—but this is not sufficient to show that the Coca-Cola was poison or deleterious. . . . The evidence is wholly lacking that the foreign substance caused or could have caused appellee's illness.'' See, also, *Coca-Cola Co.* v. *Wood,* 197 Ark. 489, 123 S. W. 2d 514; *Jonesboro Coca-Cola Co.* v. *Young,* 198 Ark. 1032, 132 S. W. 2d 382.

The verdict of the jury was necessarily based on pure speculation and conjecture. The court erred in

refusing to direct a verdict for appellant at its request. The judgment is reversed, and it appearing that the cause has been fully developed, it is dismissed.

Justices MILLWEE and LEFLAR concur in the conclusion that the judgment should be reversed, but on the ground that there was material error in an instruction given to the jury at the trial rather than on the ground stated in the majority opinion. This would mean that the case should be reversed and remanded for new trial rather than dismissed.