Jacob J. Schwabtzwald, J.
In an action to recover damages for personal injuries plaintiffs move to amend their complaint to allege for each of them an additional cause of action for breach of an implied warranty of quality and wbolesomeness in the sale of food.
In substance the complaint presently alleges that one Joan Welch purchased a crumb custard cake from the defendant which was baked by the latter in his bake shop; that her husband and guests of theirs (the husband’s brother and mother) became ill as a result of eating the said cake which, upon analysis, was found to contain certain toxic matter deleterious to the human system. The proposed amendments allege, in addition to the above, that Joan Welch acted as agent for each of the plaintiffs and that the defendant implicitly warranted that the cake was reasonably fit for human consumption.
The defendant, citing Chysky v. Drake Bros. Co. (235 N. Y. 468), asserts that the holding therein is dispositive of plaintiffs’ motion herein. It was there said (p. 472): “The general rule is that a manufacturer or seller of food, or other articles of personal property, is not liable to third persons, under an implied warranty, who have no contractual relations with him. The reason for this rule is that privity of contract does not exist between the seller and such third persons, and unless there be privity of contract, there can be no implied warranty. ’ ’
It seems clear that our modern standards and criteria should not be encumbered with such an uncompromising rule and as a result “ The assault upon the citadel of privity ” has rapidly developed (Ultramares Corp. v. Touche, 255 N. Y. 170, 180). Based upon the high regard which the law has for human life, the assault, especially in food cases, has become more vigorous. Acknowledging that the consequences to the consumer resulting from consumption of articles for immediate use may be disastrous and that if anyone must suffer it ought not be the one who has no opportunity of determining the condition of the article but rather the one who has at his command the means of doing so. The trend has been away from the Ghysky case (supra) and other cases as Redmond v. Borden’s Farm Prods. Co. (245 N. Y. 512) (where an infant was denied recovery, having been injured from broken glass in a bottle of milk sold to the mother), Smith v. Hanson (228 App. Div. 634) (where an infant was denied recovery on the ground that his mother was not his agent in purchasing cakes from the defendant) and Zotto v. Merkel Bros. (229 App. Div. 793) (where plaintiff husband was denied recovery for wrongful death of his wife, which was caused by her eating pork purchased by the husband from the *314 defendant). The trend is towards greater enlightenment and it is predicted that the rule of privity will develop into one by which ultimately anyone who makes a contract with another will be liable to anyone who may be expected to be injured by a defective performance. (Dean Prosser, 9 Ark. L. Rev. 81, 88 [1955].)
Upon this aspect of the case the more liberal view has been adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws. In their official draft of a Uniform Commercial Code (1952) provision is made in section 2-318 thereof that “ A seller’s warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. ’ ’
The express purpose of this provision is to “ give the buyer’s family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to ‘ privity.’ ”
A similar recommendation was made by the Law Revision Commission of the State of New York in 1943. It recommended that subdivision 1 of section 98 of the Personal Property Law be amended to read as follows (p. 411): “ 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment (whether he be the owner or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. Liability on such warranty shall extend to the buyer’s employees and to the members of his household, using the goods for such purpose with the buyer’s consent express or implied.”
The foregoing amendment, however, has not yet been adopted by the Legislature of this State.
Significantly, the Legislature of the State of Connecticut has extended the breach of warranty protection to the ‘ ‘ members of the buyer’s household ” (1939 Supp. to Conn. Gen. Stats., ch. 232, § 1276e).
The courts of this State and our sister States, despite their hesitancy to circumvent rules of law by artificial means, have created a path to protect the ultimate consumer by suiting the action to the word, the word to the action. Thus, in Klein v. Duchess Sandwich Co. (14 Cal. 2d 272), the court reversed a judgment in favor of a restaurateur and a sandwich company where the sandwich company had prepared and delivered sand *315 wiches to the restaurant and the plaintiff husband and his wife sued for injuries to the wife from eating a sandwich containing maggots. The court held that although the husband had actually made the purchase of the sandwich, the wife had “ sent ” him into the restaurant for the express purpose of purchasing the sandwich of which she later ate a portion, and consequently she was, in effect the buyer within the terms of the Sales Act. The court also specifically held that the existence of privity of contract was not an essential in an action brought by an ultimate consumer of food on the warranty theory, the warranty being construed as being intended not only for the benefit of the purchaser but also the ultimate consumer. The court reasoned that to sustain the defendants’ contention construing the Sales Act as imposing a strict privity of contract on the consumer of assertedly unwholesome food as an essential requisite for bringing an action on the implied warranty theory would result in denying recovery to a father or mother of an infant child who purchased a bottle of unwholesome milk, or other deleterious-food, for consumption by the child who subsequently became ill as a result of its consumption; that it was improbable that the Legislature, in adopting the act, ever intended or contemplated that such a construction would or could be placed upon the language of the particular section thereof creating the warranty; and that to allow a recovery by a third person who may have consumed unwholesome food purchased by another would not impose a greater burden on the manufacturer or on the immediate seller of the food than would be imposed if the original purchaser had been injured by reason of its consumption.
A similar result was arrived at in the State of Illinois in the case of Blarjeshe v. Thompson’s Restaurant Co. (325 Ill. App. 189). There a sandwich was purchased at the request of one of the plaintiffs by a third person from the defendant’s restaurant. It was delivered to the plaintiff who requested it. The latter gave half of the sandwich to the coplaintiff. Both became ill, allegedly as a result of a fungus growth covering the contents. The defendant contended that the plaintiffs could not claim advantage of an implied warranty since they were not the purchasers and that even if the purchaser is considered the agent of the plaintiff for whom the sandwich had been purchased, she could not he the agent of the coplaintiff, who was a donee of a portion of the sandwich. There the court held that the implied warranty of the fitness of food for human consumption extends beyond the immediate purchaser and extended to both plaintiffs.
Similar conclusions have been arrived at in other States, each grasping upon some innovated theory to overcome the privity *316 rule. The scar of privity has been retained but without the arrogant force which unjustly denies relief to an innocent victim. Thus, in the ‘1 State of Ohio, the ultimate consumer is treated as a third-party beneficiary (Ward Baking Co. v. Trizzino, 27 Ohio App. 475); similarly in Kansas (Challis v. Hartloff, 136 Kan. 823).” In Mississippi the warranty runs with the title (Coca-Cola Bottling Works v. Lyons, 145 Miss. 876); similarly in Iowa (Davis v. Van Camp Packing Co., 189 Iowa 775) and in Missouri ‘ ‘ privity of contract exists in the consciousness and understanding of all right-thinking persons” (Madouros v. Kansas City Coca Cola Bottling Co., 230 Mo. App. 275, 283).
Our own State has chipped away, eroded and streamlined the privity rule and its demise, without elegy, is in view. Here our courts have permitted a husband to recover for the breach of implied warranty where his wife had purchased the food based upon a presumption of agency (Ryan v. Progressive Grocery Stores, 255 N. Y. 388; Visusil v. Grant Co., 253 App. Div. 736) and in Hopkins v. Amtorg Trading Corp. (265 App. Div. 278, 285) ordered a new trial so that plaintiff father could “ show that the son acted simply as his agent in making the purchase and that the cause of action in contract accrued to the father. ’ ’ Recently, in Bowman v. Great Atlantic & Pacific Tea Co. (308 N. Y. 780), the Court of Appeals, affirming the lower court, appears to have opened the door to the application of the agency theory as between any relationship of persons. The court below (284 App. Div. 663) in sustaining the complaint where a sister was the purchaser for a plaintiff sister, stated (p. 666) that there ‘‘ is certainly no argument against liability where the plaintiff is an actual party to a contract negotiated through the agency of another.”
Thus, in summary, the words of Mr. Justice Stabke, in his erudite article in the New York Law Journal of April 8, 9 and 10, 1957, on the implied warranty of quality and wholesomeness in the sale of food are pertinent. “ The fortress built around the word1 privity ’ in breach of warranty of fitness of food cases has been undermined rather severely, because its foundation is weak. The strict interpretation of privity is based on technicality rather than reason. Today ‘ privity ’ in food cases appears to be just a ‘ bugaboo ’ and rightly so.” (N. Y. L. J., April 8,1957, p. 4, col. 2.)
It is thus evident as long as we are incumbered with the privity rule, no matter how it may be disguised, progress towards the full protection of the consumer will be slow and tedious. It is not easy to understand why we should tenaciously adhere to such a' rule which experience has revealed to us to be unsound. *317 The law is not static, but dynamic, and it is the duty of onr courts to bring the law abreast of present-day standards of wisdom and justice. Since one of the avowed purposes of the implied warranty theory is to protect the health of inhabitants of the State, it would seem to be imperative that the implied warranty rule should not limit the benefits to only the purchaser but it should extend to all others who, through the purchaser, partake of the food purchased. In our present-day liberalism and enlightened standards our interpretation of the implied warranty rule should be that an obligation is imposed by law upon one who impels the wrong and that the ultimate consumer who has suffered by reason of a violation of such obligation has a cause of action against the violator privity notwithstanding.
The theory of bringing the law up to modern-day standards is being vigorously pursued by our trial and appellate courts. Recently this court, in a case bringing the common law up to present-day levels, said: “ Our * * * law cannot hope to survive by stubborn adherence to decisions written for a different world. We cannot and should not apply seventeenth and' eighteenth century rules to twentieth century conditions.” (Henderson v. Henderson, 11 Misc 2d 449.)
The Court of Appeals, in abandoning an old-line distinction between an administrative act and a medical act, courageously said: “ Fuld, J. — Following Schloendorff v. New York Hospital (211 N. Y. 125), a body of law has developed making the liability of a hospital for injuries suffered by a patient, through the negligence of its employees, depend on whether the injury-producing act was ‘ administrative ’ or ‘ medical. ’ The wisdom and workability of this rule exempting hospitals from the normal operation of the doctrine of respondeat superior have in recent years come under increasing attack. Decision in the present case calls upon us to say whether the rule should longer endure. * * * In sum, then, the doctrine according the hospital an immunity for the negligence of its employees is such a rule, and we abandon it. ’ ’ (Bing v. Thunig, 2 N Y 2d 656, 658-659, 667.)
For some time prior to this decision in the Bing case, it was indicated that this would eventually happen, and did. Judge Desmond, speaking for the court, in Berg v. New York Soc. for Relief of Ruptured & Crippled (1 N Y 2d 499, 503) declared: “ Whatever be the ultimate fate of the Schloendorff rule, this case need not be pushed into the Schloendorff mould. ’ ’ The Bing case made clear what he had in mind.
The proposed amendments to the complaint are sufficient in law. Accordingly, plaintiffs’ motion is granted.
Settle order on notice.