CHESTER SIMPSON *v.* POWERED PRODUCTS OF MICH., INC., ET AL.

COURT OF COMMON PLEAS    HARTFORD COUNTY    FILE NO. 84951

Memorandum filed February 21, 1963

*Kennedy & Zaccagnino,* of Hartford, for the plaintiff.

*Joseloff, Murrett & Throwe,* of Hartford, for the named defendant.

*Cooney & Scully,* of Hartford, for defendant The Magovern Company, Inc.

LUGG, J. The following facts are material to the instant issue. Powered Products of Mich., Inc.,

manufactures power golf carts under the brand name of "Caddy Car," one of which it sold to The Magovern Company, Inc., hereinafter referred to as "Magovern." The latter transferred the cart to Gerardi, a golf professional, under an agreement providing for the return thereof at his option if it was not suited to his purposes. Simpson rented the car from Gerardi and was caused to fall, while occupying it, by reason of the falling apart or loosening of arm and back rests. He now claims damages against all three defendants for the resulting injuries, in a substituted complaint the second count of which asserts inter alia that "[t]he defendant Magovern Co., Inc., by means of extensive advertisement and other means impliedly and/or expressly warranted to the defendant Ernest J. Gerardi and to the plaintiff Chester Simpson, in his capacity as a member of the general public, that said Caddy Car and all other Caddy Cars old [sic] by it were safe and fit for their intended use." Magovern demurs to this count for the reason that it "does not set forth a cause of action in warranty, because it appears from the Complaint that the plaintiff did not purchase said power golf car and, therefore, there was no sale from which a warranty would arise." The narrow ground thus stated, if taken strictly in terms, is within the holding of *Hamon* v. *Digliani,* 148 Conn. 710, 711 (1961), and should be overruled. "The defendants demurred to this count on the sole ground that no privity of contract nor any sale between them and the named plaintiff, hereinafter called the plaintiff, was alleged." Ibid. Such a restricted literal construction of this demurrer would obviously evade the several other issues raised.

The second count of the complaint, here in question, is to be tested on demurrer by the facts provable under its allegations. "If any facts which are

provable under the allegations of the . . . [count] would support the cause of action relied on, the demurrer must fail." *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 102 (1961). The allegation of a direct warranty from Magovern might, if supported by the evidence, give rise to a cause of action against it by the plaintiff. However, it is also set forth that Simpson leased the cart from the ultimate purchaser, Gerardi. The fundamental point raised by the defendant Magovern in its brief is that it is the character of this transaction as a lease, as distinguished from a sale, which cuts off any passage of a warranty from Magovern to the plaintiff. Simpson contends he has a right of action based on breach of warranty despite the nature of his status as a lessee. "Under these circumstances the court, in the interest of economy of judicial procedure, . . . has decided to take the case as presented by the parties." *Swainbank* v. *Coombs,* 19 Conn. Sup. 391, 394 (1955); see also *International Union* v. *General Electric Co.,* 148 Conn. 693, 697 (1961); *Anselmo* v. *Cox,* 135 Conn. 78, 79 (1948).

The plaintiff's first argument in support of his claimed right of action against Magovern is that the warranties he relies on are common-law warranties and not warranties subject to the Sales Act, and that therefore a sale is not a prerequisite. To buttress this, he quotes from *Hamon* v. *Digliani,* supra, 716, "These cases, and others of similar import, rely on the original concept of an action for breach of warranty, that is, that it sounds in tort and is based on the plaintiff's reliance on deceitful appearances or representations rather than on a promise. . . . The recognition of such a right of action rested on the public policy of protecting an innocent buyer from harm rather than on the ensuring of any contractual rights." This argument

of the plaintiff fails to grasp the significance of the word "buyer" in the quoted language. Although the right of action sounded in tort, it was still an action on a breach of warranty arising from a contractual relationship, springing from a purchase and running in favor of a buyer. Hence the result claimed by the plaintiff does not follow from the authority quoted.

The plaintiff further argues, however, that the dealer's warranty to Gerardi should be extended to the plaintiff since it was in the contemplation of Magovern that he might be a user of the car, and because he is a third party beneficiary to the sales contract between Gerardi and Magovern. It should be kept in mind in this discussion that the usual question of privity has to do with ultimate purchaser against manufacturer. That, of course, was the point discussed in the *Hamon* case, supra. Here, the issue is whether or not the warranty of the retailer-seller to the purchaser extends to the latter's lessee. Stated another way, it is whether or not the plaintiff lessee is, on any ground, within the group of persons to whom the warranty of fitness may be construed to extend.

Very large numbers of such golf cars as the one here are in use on courses throughout this state and this country. At least a major percentage of them are owned and maintained by organizations or individuals operating such courses for rental to players rather than by the players themselves. This is a matter of common knowledge and as such is subject to judicial notice. *Silverman* v. *Swift & Co.,* 141 Conn. 450, 458 (1954). "Facts patent to all persons concerning popular pastimes of the people are judicially known." 31 C.J.S. 678, Evidence, § 83.

The defendant Magovern's memorandum on its demurrer makes clear as one of its main points

that Simpson leased and did not purchase the Caddy Car from Gerardi and hence does not have a cause of action against him on breach of warranty. This being so, it claims, a fortiori, he does not have a cause of action against this defendant. The point is well made vis-a-vis the facts in the *Hamon* case, supra. The latter concerned a plaintiff who was a purchaser from the retailer. The latter was in turn a direct purchaser from the manufacturers, who sought to escape liability for the plaintiff's injuries on the ground of no privity of contract and no sale to the plaintiff. *Hamon* therefore concerned a series of sales, while the instant case involves a series of sales terminating in a lease or rental agreement. Obviously, however, the latter is still a contractual relationship, as is a sale.

The same memorandum also mentions as a distinguishing feature between this and the *Hamon* case that what that case was concerned with was a product in a sealed package or container. This is true, but it gives rise to a further connotation to which the defendant does not proceed. A product in a sealed container does not lend itself to inspection by successive wholesalers, jobbers and retailers. The product here in issue is not such a packaged article and would hence, in passing through this defendant's hands, be open to inspection and examination by this defendant without suffering obvious impairment to its marketability consequent thereon.

Defendant's memorandum also correctly states that the *Hamon* decision was concerned with the national scope and character of advertising by the manufacturer, thus "himself inducing the public to use his product and *thus circumventing the reliance by the consumer upon the retailer*" (italics added). It needs only a reading of the second count to demonstrate the invalidity of this point here. As

noted above, it is explicitly alleged that this defendant "by means of extensive advertisement and other means impliedly and/or expressly warranted to the defendant Ernest J. Gerardi and to the plaintiff Chester Simpson, in his capacity as a member of the general public, that said Caddy Car and all other Caddy Cars old [sic] by it were safe and fit for their intended use." *Hamon* (p. 717) was concerned in major degree with just this "alluring enticement," and the quoted allegation appears to be an effort to bring that phase of this case within its scope. "We point out that we are concerned here only with the sufficiency of the second count to withstand demurrer and not with the proof which will be required on the trial." Id., 718.

Defendant's memorandum refers to the concern of the *Hamon* opinion with circuity of action. This is true, but it does not lead into defendant's non sequitur that therefore it abolished the requirement of privity only under the narrow circumstances there presented. If this plaintiff were to gain a recovery against Gerardi, his immediate contractor, on the theory either of breach of warranty or negligence, Gerardi could initiate precisely that series of "several separate and distinct pieces of costly litigation by those in the chain of title" which the *Hamon* opinion deplored. Dean Prosser, in his article, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1124 (1960) (cited in the *Hamon* opinion, p. 713), sums up: "This is an expensive, time-consuming, and wasteful process, and it may be interrupted by insolvency, lack of jurisdiction, disclaimers, or the statute of limitations, anywhere along the line. What is needed is a blanket rule which makes any supplier in the chain liable directly to the ultimate user, and so short-circuits the whole unwieldy process. This is in the interest, not only of the con-

sumer, but of the courts, and even on occasion of the suppliers themselves."

Since this sale was made before 1 October 1961 (the effective date of the Uniform Commercial Code in this state), it is governed by the former Sales Act. A reference to the development of these laws furnishes some food for thought on the question of legislative intent as to the abolition of the requirement of privity of contract and the imposition of strict liability. Former § 42-16 (now repealed) extended an implied warranty of fitness of food or drink "to the purchaser and to all persons for whom such food or drink is intended." Application of the principle of inclusio unius est exclusio alterius would mean that that extension applied solely to food or drink. New § 42a-2-315 extends an implied warranty of fitness for a particular purpose, if the seller has reason to know that purpose. New section 42a-2-318 extends an express or implied warranty to any person in the family or household of the buyer, or who is a guest in his home. This would seem to be an expansion of the old law to any article, and a contraction from "all persons for whom . . . [it] . . . is intended." However, in the official Uniform Commercial Code comment, it is stated: "This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Conn. Gen. Stat. Ann. § 42a-2-318; see "Scope of the Uniform Commercial Code," by Professor William F. Starr, one of the most authoritative commentators on the subject, at 19 Conn. Gen. Stat. Ann., pp. 31, 32 (1960).

Since upon its facts the decision in *Hamon* v. *Digliani,* supra, is not decisive in this case, an attempt to understand its underlying conceptions is necessary in seeking the solution of the issue here. Beyond question, that opinion dealt with a comparatively simple factual situation of sale from manufacturer to retailer, who in turn sold to ultimate purchaser-consumer-plaintiff. Equally beyond question, that opinion refers repeatedly, in terms, to representations to the ultimate purchaser as distinguished from any other ultimate consumer, and to the manufacturer or producer as distinguished from the middleman. We feel, however, that that decision, especially in view of the citations of authority there made, relies upon basic assumptions which encompass the issues in the present case. One comment has construed the *Hamon* case as "abolishing the privity requirement in situations where manufacturer advertising has induced consumer reliance on the quality of a product." *Noel* v. *United Aircraft Corporation,* 204 F. Sup. 929, 931 n.8 (1962).

The court in *Hamon* relied upon cases where a recovery was allowed on the breach of warranty theory to injured parties who were not the ultimate purchaser, nor indeed, in any other than a gratuitous relationship to him. *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358, 75 A.L.R.2d 1 (1960); *Greenberg* v. *Lorenz,* 9 N.Y.2d 195 (1961). To these citations may be added others in which victorious plaintiffs were not the ultimate purchaser but in various relationships to him. *Gottsdanker* v. *Cutter Laboratories,* 182 Cal. App. 2d 602, 608, 79 A.L.R. 2d 290 (1960). "[W]e see no reason to hold that he [the defendant] escapes liability because the ultimate consumer, whose use of the product is the essential consideration in its manufacture for the market, is not a purchaser under a contract of sale."

Ibid.; *Klein* v. *Duchess Sandwich Co.*, 14 Cal. 2d 272 (1939); *Blanton* v. *Cudahy Packing Co.*, 154 Fla. 872 (1944); *Haut* v. *Kleene*, 320 Ill. App. 273 (1943); *Welter* v. *Bowman Dairy Co.*, 318 Ill. App. 305 (1943); *Blarjeske* v. *Thompson's Restaurant Co.*, 325 Ill. App. 189 (1945) (dictum); *Davis* v. *Van Camp Packing Co.*, 189 Iowa 775 (1920); *Graham* v. *Bottenfield's, Inc.*, 176 Kan. 68 (1954); *Nichols* v. *Nold*, 174 Kan. 613 (1953); *Swengel* v. *F. & E. Wholesale Grocery Co.*, 147 Kan. 555 (1938); *Miller* v. *Louisiana Coca-Cola Bottling Co.*, 70 So. 2d 409 (La. Ct. App. 1954); *Bryer* v. *Rath Packing Co.*, 221 Md. 105, 77 A.L.R.2d 1 (1959); *Coca-Cola Bottling Works* v. *Lyons*, 145 Miss. 876 (1927); *Nemela* v. *Coca-Cola Bottling Co.*, 104 S.W.2d 773 (Mo. Ct. App. 1937) (dictum); *Welch* v. *Schiebelhuth*, 11 Misc. 2d 312 (N.Y. Sup. Ct. 1957); *Jacob E. Decker & Sons, Inc.* v. *Capps*, 139 Tex. 609 (1942); *Griggs Canning Co.* v. *Josey*, 139 Tex. 623 (1942); *Swift & Co.* v. *Wells*, 201 Va. 213 (1959). It is true that some of these cases involve food and drugs, and that formerly "[m]ost of the cases where lack of privity has not been permitted to interfere with recovery have involved food and drugs." *Henningsen* v. *Bloomfield Motors, Inc.*, supra, 382. "But more recently courts, sensing the inequity of such limitation, have moved into broader fields . . . ." Id., 383, & cf. cases collected there. "We see no rational doctrinal basis for differentiating between a fly in a bottle of beverage and a defective automobile. The unwholesome beverage may bring illness to one person, the defective car, with its great potentiality for harm to the driver, occupants, and others, demands even less adherence to the narrow barrier of privity." Ibid.

Among the states which have done away with the privity of contract requirement and accepted strict liability, there appears to be general agreement

that privity of contract is not a prerequisite for recovery for breach of warranty against the retailer as well as against the manufacturer. *Henningsen* v. *Bloomfield Motors, Inc.*, supra, & note, 75 A.L.R.2d 39, 88, § 15; Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1141 (1960). "There appears to be no sound reason for depriving a plaintiff of the right to maintain an action against the manufacturer where the plaintiff alleges that he was induced to purchase the product by the representations in the manufacturer's advertising and that he sustained harm when the product failed to measure up to the express or implied representations. . . . Where the manufacturer or producer makes representations in his advertisements or by the labels on his products as an inducement to the ultimate purchaser, the manufacturer or producer should be held to strict accountability to any person who buys the product in reliance on the representations and later suffers injury because the product fails to conform to them. *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244, 249 . . . ; see Prosser, Torts (2d Ed.) p. 506; Williston, Sales (Rev. Ed.) § 244 & Cum. Sup. § 244d. Lack of privity is not a bar to suit under these circumstances." *Hamon* v. *Digliani*, supra, 718.

The manufacturer, wholesaler or retailer, in order to market his products, makes representations, and he intends that they shall be relied on by many others besides the ultimate purchaser alone. The very nature and purpose of a myriad of marketed objects necessitates that acceptance and use by the general public without which their manufacture would be impractical and their merchantability or sale almost impossible. These things are obviously true as to this golf cart. Certainly it was intended for the precise use to which it was

here put. It does not accord with logic to allow Gerardi to recover but to deny a similar right to the plaintiff, whose use of the car, as a member of the general public, was patently anticipated.

The demurrer is overruled.